# Exhibit 1

# Order

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| United States of America, | ) | |
| | ) | CASE NO. 5:15CR234 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | JUDGE JOHN R. ADAMS |
| | ) | |
| Eric R. Ramey, | ) | ORDER |
| | ) | |
| Defendant. | ) | |
| | ) | |

Pending before the Court is Defendant Eric R. Ramey's sealed motion to disqualify the undersigned. Doc. 11. The Government has opposed the motion and Ramey has replied. This order is hereby filed under seal as well.

Ramey was indicted on June 24, 2015 on two counts. The first count charged that from June 1, 2013 to June 28, 2013, Ramey, with intent to defraud, passed a counterfeit ten dollar, fifty dollar, and one hundred dollar Federal Reserve Note. Count two charged Ramey with counterfeiting those same Federal Reserve Notes during that same time period. Ramey was arraigned before the undersigned on July 14, 2015 and pled not guilty. His trial was set for September 14, 2015 with a final pretrial on September 1, 2015.

The first suggestion that Ramey may seek to disqualify the undersigned was raised during the scheduled final pretrial held on September 1, 2015. At that time, defense counsel informed the Court that Ramey "is friends with Jerry Adams, Junior, who I understand might be the Court's nephew, son of Jerry Adams, Senior." Counsel went on to inform the Court that Ramey believed he may be called as a witness in a petty theft proceeding that was then-pending against Jerry

1

Adams, Jr.  At that time, the Court informed counsel that it had no prior knowledge of the information that was supplied and that "I have not had any contact with my nephew now for many months."  At that time, the undersigned informed counsel that "none of this causes me any concern or has any bearing whatsoever on what the Court may do as it relates to this particular matter."

The issue then expanded during a subsequent conference with the Court on September 14, 2015.  At the start of that conference, defense counsel indicated that he wished "to present some additional information we discovered last week regarding the possible conflict of interest for the court."  Counsel then informed the Court that Ramey was also "very close" with Jerry Adams, Sr., the undersigned's brother and the relationship "goes back years and years."  At that time, the undersigned informed counsel as follows:  "I have no contact with my brother whatsoever.  We are estranged. ... I do not know my brother's whereabouts, his physical presence is unknown to me.  I have had no contact with him now for many years, or I should say many months, and if not, years."  The Court then informed counsel that it would permit him to file a formal motion to disqualify if he felt such a motion was warranted.

Counsel filed that motion on September 24, 2015, once again dramatically expanding the alleged extent of the conflict.  With the motion, Ramey contends that he "has a longstanding and unhealthy relationship with both the Court's brother and nephew."  Doc. 11 at 4. This relationship is expounded upon in Ramey's affidavit.  Within his affidavit, Ramey asserts that he met Jerry Adams, Jr. and Jerry Adams, Sr. in March of 2014.[1]  Ramey asserts that he has interacted on a daily basis with both individuals.  Ramey swears that his "main relationship" with the individuals

---

1 This stands in direct conflict with his statement that he had known him for "years and years."

2

"involved the use of drugs; we used opiates together during this 14 month period."   Ramey further asserts that "[a]lthough I needed help, I continued to use drugs with Jerry Adams, Jr. until August, 2015.   We used on a daily basis."   Doc. 11-1 at 1.

Ramey further alleges that he visited a nursing home with Jerry Adams, Jr. on July 20, 2015.   Ramey asserts that while sitting in a car in the parking lot of that nursing home, Jerry Adams, Jr. pointed at the undersigned and told Ramey, "There is my Uncle John."   Ramey then contends he put this information together with his experience and realized that the undersigned was both the presiding judge in this matter and Jerry Adams, Jr.'s uncle.   Based upon these facts, Ramey contends that the undersigned should disqualify himself from this matter.

Under 28 U.S.C. § 455(a), a judge must disqualify himself "in any proceeding in which his impartiality might reasonably be questioned." Under this provision, the judge need only recuse himself if "a reasonable, objective person, knowing all of the circumstances, would have questioned the judge's impartiality." *United States v. Sammons*, 918 F.2d 592, 599 (6th Cir. 1990). Because the standard is an objective one, "the judge need not recuse himself based on the subjective view of a party no matter how strongly that view is held." *Id.* (internal quotation marks and citation omitted). Under §455(b)(1), a judge must disqualify himself "[w]here he has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding."   Recusal is mandatory pursuant to 28 U.S.C. § 144 "[w]henever a party to any proceeding in a district court makes and files a timely and sufficient affidavit that the judge before whom the matter is pending has a personal bias or prejudice either against him or in favor of any adverse party."   Section 144 further provides:

The affidavit shall state the facts and the reasons for the belief that bias or prejudice

3

exists, and shall be filed not less than ten days before the beginning of the term at which the proceeding is to be heard, or good cause shall be shown for failure to file it within such time. A party may file only one such affidavit in any case. It shall be accompanied by a certificate of counsel of record stating that it is made in good faith.

To be "legally sufficient," the facts must "give fair support to the charge of a bent of mind that may prevent or impede impartiality of judgment." *Berger v. United States*, 255 U.S. 22, 33–34, (1921). While Ramey's motion asserts that recusal is warranted under both Section 144 and Section 455, he has not filed an affidavit asserting a bias or prejudice held by the undersigned, let alone one "legally sufficient" as defined in *Berger*. In addition, while affidavits alleging the facts discussed above were filed, counsel did not file the certificate specifically required by § 144. In a reply, counsel contends that all defense motions are made in good faith. However, § 144 specifically requires such a certificate to accompany any affidavit of bias.

> The purpose of the requirement that an affidavit of prejudice under Section 144 be accompanied by a certificate of good faith filed by counsel of record, is to prevent abuse. Under this section, 'counsel of record * * * has an obligation which he owes to the court as well as to his client, and he owes a public duty to aid the administration of justice, to uphold the dignity of the court and respect its authority.' *United States v. Onan*, 190 F.2d 1, 6-7 (8th Cir.), *cert. denied*, 342 U.S. 869, 72 S.Ct. 112, 96 L.Ed. 654 (1951). The certificate 'requirement is founded on the assumption that a member of the bar or counsel of record will not indulge in reckless disregard of the truth, and further attests to the good faith and belief of the affiant.' *Mitchell v. United States, supra* 126 F.2d at 552; *see United States v. Gilboy, supra* 162 F.Supp. at 391.
>
> A charge of prejudice is a most serious matter, and is not to be lightly or frivolously made. Accordingly, counsel should not affix his name without considerable deliberation and investigation as to whether the allegations in the affidavit are true. ... 'These affidavits should be prepared with the utmost care and certainty as to the facts.' *Eisler v. United States*, 83 U.S.App.D.C. 315, 170 F.2d 273, 283 (1948) (Prettyman, J., dissenting). 'If a certificate is to serve the purpose of shielding a court which cannot test the truth of claimed facts, it should at least carry the assertion that counsel believes the facts alleged to be accurate and correct.' *In re Union Leader Corp., supra* 292 F.2d at 385.

4

*United States v. Hanrahan*, 248 F. Supp. 471, 478 (D.D.C 1965). Herein, there is no question that the motion did contain the required certificate. Moreover, counsel's after-the-fact statement that "[a]ll motions filed by the defense must always be made in good faith" effectively ignores that the certification was put in place with a particular purpose in mind and that purpose is not achieved without the proper certification.

In any event, the affidavits attached do not allege any prejudice or bias. There are no allegations that the undersigned harbors or has demonstrated any ill will regarding Ramey or his conduct. Instead, the affidavits are relied upon exclusively to suggest an appearance of a lack of impartiality, an argument not properly raised under Section 144. Based upon the lack of any legally sufficient affidavit, Ramey has not met the requirements of Section 144. Instead, Ramey has filed affidavits and asserts that the information contained therein creates an appearance of impartiality, an argument tied solely to Section 455 which will be addressed below.

On repeated occasions, Ramey contends that the undersigned's lack of a relationship with Jerry Adams, Jr. and Jerry Adams, Sr. is irrelevant to any analysis herein. This contention is faulty for numerous reasons.

First, Ramey appears to rely in some capacity on 28 U.S.C. 455 (b)(5) which provides:

[A judge] shall also disqualify himself in the following circumstances:

(5) He or his spouse, or a person within the third degree of relationship to either of them, or the spouse of such a person:

(i) Is a party to the proceeding, or an officer, director, or trustee of a party;

(ii) Is acting as a lawyer in the proceeding;

(iii) Is known by the judge to have an interest that could be substantially affected by

the outcome of the proceeding;

(iv) Is to the judge's knowledge likely to be a material witness in the proceeding.

While unclear in the motion, it appears that Ramey relies almost exclusively upon the degree of the

familial relationship to claim that recusal is mandated.    There is no dispute that the undersigned's

nephew and brother fall within the third degree of consanguinity required in § 455(b)(5).

However, it is equally undisputed that the remaining requirements of § 455(b)(5) are not satisfied.

The individuals at issue are not parties to this proceeding, are not acting as lawyers in this

proceeding, are not known to have any interest in this proceeding, and are not likely to be

witnesses in this proceeding.    As such, the requirements of § 455(b)(5) have not been satisfied and

do not require recusal.

Ramey next falls back on § 455(a).

Section 455(a) has been termed the "'catchall' recusal provision, covering both
'interest and relationship' and 'bias and prejudice grounds.' *Id.* at 548. Actual bias
is not necessary; the appearance of bias is adequate to trigger recusal under § 455.
The inquiry under § 455(a) is based on an objective standard. *Id.* Thus, the inquiry
to be made is "whether a reasonable person perceives a significant risk that the
judge will resolve the case on a basis other than the merits." *Hook v. McDade*, 89
F.3d 350, 354 (7th Cir.1996) (citation omitted). "The decision whether a judge's
impartiality can 'reasonably be questioned' is to be made in light of the facts as they
existed, and not as they were surmised or reported." *Cheney v. United States
District Court for the District of Columbia*, 541 U.S. 913, 124 S.Ct. 1391, 1392
(2004) (quoting *Microsoft Corp. v. United States*, 530 U.S. 1301, 1302 (2000)).
This inquiry is made based on a reasonable person standard, as opposed to "a
hypersensitive or unduly suspicious person." *Hook*, 89 F.3d at 354 (citation
omitted). Thus, trivial risks of perceived impartiality are insufficient to warrant
recusal. *See Id.* The objective, reasonable person standard of § 455(a) is intended to
promote public confidence in the impartiality of the judicial process. "In furthering
the policy of public confidence in the impartiality of the judicial process, a court
faced with a motion under § 455(a) must recuse itself where valid reasons are
presented, and must not recuse itself where the proffered reasons are not valid."
*New York City Housing Development Corp. v. Hart*, 796 F.2d 976, 981 (7th Cir.
1986); *see also United States v. Baskes*, 687 F.2d 165, 170 (7th Cir.1981) (*rev'd on*

*other grounds*) ("A motion for recusal should not be granted lightly; a judge is under as much obligation not to recuse himself when facts do not show prejudice as he is to recuse himself if they do.").

*United States v. Peel*, 2006 WL 1388864, at *2 (S.D. Ill. May 18, 2006). However, "the care with

which the recusal rules were crafted should lead any judge to 'hesitate to treat the general language

of § 455(a) as a bar to judicial service whenever a relative has 'something to do with' a party.' *In*

*re Nat'l Union Fire Ins. Co. of Pittsburgh*, 839 F.2d 1226, 1229 (7th Cir.1988)." *In re Medtronic,*

*Inc. Sprint Fidelis Leads Products Liab. Litig.*, 601 F. Supp. 2d 1120, 1129 (D. Minn. 2009).

Moreover, other courts have noted "that maintaining the purity of appearance is not worth the cost

of giving litigants a negative veto power over the assignment of judges." *In re San Juan Dupont*

*Plaza Hotel Fire Litig.*, 129 F.R.D. 409, 413 (D.P.R. 1989). In fact, "[i]f every judge were

required to disqualify him or herself whenever a family member of a professional acquaintance

was indirectly involved in a case, disqualification would be a daily event." *United States v. Haff*,

2001 WL 627426, at *2 (D.N.D. Jan. 24, 2001).

　　　With the above background in mind, the Court comes to the first flaw in Ramey's

argument, i.e., ignoring the statutory construction of Section 455 as detailed by the United States

Supreme Court:

> Declining to find in the language of § 455(a) a limitation which … is contained in
> the language of § 455(b)(1) would cause the statute, in a significant sense, to
> contradict itself. As we have described, § 455(a) expands the protection of §
> 455(b), but duplicates some of its protection as well—not only with regard to bias
> and prejudice but also with regard to interest and relationship. Within the area of
> overlap, it is unreasonable to interpret § 455(a) (unless the language requires it) as
> implicitly eliminating a limitation explicitly set forth in § 455(b). It would
> obviously be wrong, for example, to hold that "impartiality could reasonably be
> questioned" simply because one of the parties is in the fourth degree of relationship
> to the judge. Section 455(b)(5), which addresses the matter of relationship
> specifically, ends the disability at the third degree of relationship, and that should

7

obviously govern for purposes of § 455(a) as well.

*Liteky v. United States*, 510 U.S. 540, 552-53 (1994).  While perhaps not dispositive, the same argument exists herein.  When analyzing an individual within the third degree of relationship to the presiding judge, *more* is required than just the simple existence of the relationship.  Specifically, a connection of some kind to the existing matter is required.  Were the Court to adopt Ramey's appearance of impartiality conclusion, it would essentially write that relationship requirement out of § 455(b).  Such a result is prohibited by the holding in *Liteky*.

Furthermore, even if this Court were to overlook the statutory construction compelled by *Liteky*, an analysis of all the facts leads to the same conclusion.  While Ramey asserts over and again that the undersigned's lack of any relationship with Jerry Adams, Jr. and Jerry Adams, Sr. is irrelevant, the standard involves an objective person "knowing *all* of the circumstances[.]" *Sammons*, 918 F.2d at 599 (emphasis added).  In evaluating all of the facts, a reasonable observer would be left with the knowledge of the following facts:

    1) Ramey is involved in some form of a friendship with two individuals that are related by blood to the undersigned;

    2) The undersigned has no relationship with these two individuals;

    3) Until Ramey presented the matter, the undersigned was wholly unaware of the relationship; and

    4) The relationship between Ramey and the individuals is in no manner related or tied to the existing criminal matter.

A reasonable, objective observer could not question the undersigned's impartiality based upon those facts.  Instead, those are the type of facts that, if found to warrant recusal, would make recusal a daily event.  *See Haff, supra.*

As noted above, "a judge is under as much obligation not to recuse himself when facts do not show prejudice as he is to recuse himself if they do." *United States v. Baskes*, 687 F.2d 165, 170 (7th Cir.1981). Ramey's relationship with two individuals that have no contact with the undersigned cannot support a conclusion that recusal is warranted. Instead, any suggestion that prejudice may flow to Ramey is pure speculation unsupported by the facts he presents and the legal analysis that is mandated. As such, the undersigned is duty bound to remain the presiding officer in this matter.

In closing, the Court would note that it has accepted as true all of the statements made by counsel and those contained in the affidavits.[2] The Court has done so out of an abundance of caution, despite the dubious manner in which the facts were "developed." Ramey first brought forth facts that he knew the undersigned's nephew and may testify against him. Ramey was apparently comfortable enough to keep this information to himself until the final date he was permitted by the Court's trial order to present a plea agreement, more than two months after his arraignment. When his first overture did not result in recusal, he claimed to know both the undersigned's brother and nephew for several years. When that also did not result in *sua sponte* recusal, Ramey then claimed to have used drugs with both individuals on a daily basis for nearly 14 months. It defies logic to suggest that Ramey withheld this information from his counsel and the Court on numerous occasions. Rather, it is highly suggestive of the fact that Ramey is judge-shopping, a very real danger presented in any circumstance in which recusal is sought under

---

2 The undersigned would note that if Ramey's affidavit were accepted in its entirety, it would indicate that he used opiates daily until August of 2015 – a fact that demonstrate a violation of his bond herein. Accepting the allegations as true would also suggest that the undersigned's nephew informed Ramey that "the Judge has an Amish background" despite knowing that this lacked any factual basis.

the catchall provision.

Moreover, Ramey has indicated during every hearing before the undersigned that he desires to plead guilty. In an attempt to facilitate that plea while the issue of recusal remained pending, the undersigned referred the plea proceedings to the magistrate judge. Ramey declined to plea before the magistrate judge, apparently unwilling to plea until he knows with certainty his sentencing judge. Once again, a fact that is highly suggestive of judge shopping. These latter facts, however, did not inform the Court's statutory analysis and therefore have not been explored in depth or relied upon by the Court in any manner.

In summary, a reasonable, objective observer would not question the Court's ability to be impartial under the fact pattern developed by Ramey. Accordingly, the motion to disqualify the undersigned is DENIED.

IT IS SO ORDERED.

October 23, 2015                    /s/ John R. Adams
Dated                              JUDGE JOHN R. ADAMS
                                   United States District Judge

10

Exhibit 2

Motion to Disqualify

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | CASE NO. 5:15-CR-234 |
| | : | |
| Plaintiff, | : | |
| | : | JUDGE JOHN ADAMS |
| vs. | : | |
| | : | |
| ERIC R. RAMEY, | : | **MOTION TO DISQUALIFY THE** |
| | : | **HONORABLE JOHN ADAMS** |
| Defendant. | : | **UNITED STATES DISTRICT** |
| | : | **COURT JUDGE** |
| | : | **(FILED UNDER SEAL)** |

Now comes defendant Eric R. Ramey, through counsel, and respectfully moves this Court for Disqualification, pursuant to Title 28, United States Code, §§ 144 and 455 because a reasonable, objective person, knowing all of the circumstances, would question the judge's impartiality. In this case, considering the evidence presented herein, there is no question the instant Court's impartiality might reasonably be questioned. A memorandum in support of the Motion to Disqualify follows and is incorporated herein.

Respectfully submitted,

*/s/Carlos Warner*
CARLOS WARNER(#0068736)
Assistant Federal Public Defender
50 South Main Street, Suite 700
Akron, Ohio 44308
(330) 375-5739 Fax: (330) 375-5738
e-mail address: carlos_warner@fd.org.

1

## MEMORANDUM IN SUPPORT

### I.    Introduction and Factual Basis for Request to Disqualify

The instant conflict stems from Eric Ramey's close relationship with this Honorable Court's brother and nephew. The attached affidavits are self explanatory. (See Exhibits A, B, and C). Mr. Ramey is not proud of this relationship and the relationship led to the criminal conduct he is charged with in the instant case. It should be noted that Jerry Adams Jr. has been contacted through the information noted in the affidavit of Ms. Nussbaum. Jerry Adams Jr. indicated that his father Jerry Adams Sr. is currently in drug rehabilitation in Florida. Jerry Adams Jr. confirmed to the undersigned his long standing relationship with Mr. Ramey and advised that he would discuss with his significant other whether or not he wished to appear at the office of the undersigned to execute an additional affidavit.

It is with great discomfort that this issue was (and is) raised to the Court. The undersigned approached the Court on two occasions, about the developing information regarding the possible conflict. On these occasions, the Court determined the information should be on the record. With Mr. Ramey's permission, the information was placed on the record, in private, outside Mr. Ramey's presence. The Court ordered that the undersigned gather affidavits supporting the conflict, leaving the undersigned no option but to further investigate the conflict. Furthermore, the undersigned authorized the assigned United States Attorney to meet with the Court *ex parte* to present additional evidence gathered by the defense and included in this Motion. The undersigned understands this meeting took place and the materials contained herein were presented to the Court *ex parte*. Because the Court has not recused itself prior to the deadline for this motion set by the Court, the undersigned is left with no option but to file the instant Motion. The undersigned does so with both respect and empathy for the Court.

## II.    Legal Authority

A defendant in a criminal case "is entitled to the cold neutrality of an impartial judge"and due process "demands a fair hearing before an impartial tribunal." *United States v. Baker et al.,* 441 F.Supp. 612, 615 (M.D. Tenn, Oct. 28, 1977)(citations omitted). The Sixth Circuit has recognized that recusal is required "if a reasonable, objective person, knowing all the circumstances, would have questioned the judge's impartiality." *Johnson v. Mitchell,* 585 F.3d 923, 945 (2009). In *Knapp v. Kinsey,* the Sixth Circuit panel held:

> One of the fundamental rights of a litigant under our judicial system is that he is entitled to a fair trial in a fair tribunal, and that fairness requires an absence of actual bias or prejudice in the trial of the case. *In re Murchison,* 349 U.S. 133, 136 ; *Talbert v. Muskegon Construction Co.,* 305 Mich. 345, 348, 9 N.W.2d 572. If this basic principle is violated, the judgment must be reversed. *In re Murchison,* supra; *Berger v. United States,* 255 U.S. 22, 41 S.Ct. 230, 65 L.Ed. 481; *Moskun v. United States,* 6 Cir., 143 F.2d 129, 130; N.L.R.B. v. Phelps, 5 Cir., 136 F.2d 562.

*Knapp v. Kinsey,* 232 F.2d 458, 465 (6th Cir.1956),

The disqualification or recusal of a United States District Judge is governed by 28 U.S.C. §§ 144 and 455, both of which require recusal where the judicial officer has demonstrable bias or prejudice, or personal knowledge gained from extrajudicial sources which is germane to the issues before that court.  Specifically, 28 U.S.C. § 144 provides:

> Whenever a party to any proceeding in a district court makes and files a timely and sufficient affidavit that the judge before whom the matter is pending has a personal bias or prejudice either against him or in favor of any adverse party, such judge shall proceed no further therein, but another judge shall be assigned to hear such proceeding.
> The affidavit shall state the facts and the reasons for the belief that bias or prejudice exists, and shall be filed not less than ten days before the beginning of the term at which the proceeding is to be heard, or good cause shall be shown for failure to file it within such time. A party may file only one such affidavit in any case. It shall be accompanied by a certificate of counsel of record stating that it is made in good faith.

3

In turn, Title 28 U.S.C. § 455 provides in pertinent part:

> (a) Any justice, judge, or magistrate judge of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned.

> (b) He shall also disqualify himself in the following circumstances:

>> (1) Where he has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding;....

These statutes are construed *in pari materia. Youn v. Track, Inc.*, 324 F.3d 409, 423 (6th Cir.2003); *Green v. Nevers*, 111 F .3d 1285, 1303 (6th Cir.1997); *Easley v. University of Michigan Board of Regents*, 853 F.2d 1351, 1355 (6th Cir.1988).

Section 455(a) requires recusal when the judge's "impartiality might reasonably be questioned." Disqualification under 28 U.S.C. § 455 is mandated if a reasonable person, knowing all of the facts and circumstances, might question the judge's impartiality. The Supreme Court has held that a federal judge must *sua sponte* recuse under § 455 if the judge knows of facts that would undermine the appearance of impartiality in the minds of reasonable persons. *Liteky v. United States*, 510 U.S. 540, 547-48 (1994); *Youn*, 324 F.3d at 422-23; *Reed v. Rhodes*, 179 F.3d 453, 467 (6th Cir.1999). In *Wheeler v. Southland Corp*, 875 F.2d 1246 (6th Cir. 1989), the Sixth Circuit panel stated:

> "Personal" bias is prejudice that emanates from some source other than participation in the proceedings or prior contact with related cases. Personal bias arises out of the judge's background and associations. The critical test is whether the alleged bias "stem[s] from an extrajudicial source and result[s] in an opinion on the merits on some basis other than what the judge learned from his participation in the case."

875 F.2d at 1251-52 (citations omitted).

Here, the Defendant has a longstanding and unhealthy relationship with both the Court's brother and nephew. A cursory review of the attached affidavits would lead a "reasonable and

objective person" to question whether the Court could remain impartial under these circumstances. The Court has said on several occasions that it is estranged from Jerry Adams Sr. and Jerry Adams Jr. This estrangement does not insulate the Court from recusal here, as the facts presented in of themselves would lead a reasonable, objective person to question whether or not the Court can remain impartial. Knowing that the Defendant used narcotics with the brother and nephew of the Court for a 14 month period would lead a reasonable and objective person to conclude that the Court would have a difficult time remaining impartial in this circumstance.

*Sua sponte* recusal was mandated under 28 U.S.C. § 455 once the Court learned of the unfortunate relationship between Mr. Ramey and members of this Court's family described in the attached affidavits. Now that the affidavits have been filed, recusal is also mandated pursuant to 28 U.S.C. § 144. The Court must recuse itself.

### III.  Conclusion

For the foregoing reasons, Defendant Eric Ramey respectfully requests this Court recuse itself from the instant case, pursuant to 28 U.S.C. §§ 144 and455.

Respectfully submitted,

/s/Carlos Warner
CARLOS WARNER(#0068736)
Assistant Federal Public Defender
50 South Main Street, Suite 700
Akron, Ohio 44308
(330) 375-5739 Fax: (330) 375-5738
e-mail address: carlos_warner@fd.org.

5

## CERTIFICATE OF SERVICE

I hereby certify that on September 24, 2015, a copy of the foregoing Motion was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. All other parties will be served by regular U.S. Mail. Parties may access this filing through the Court's system.

/s/Carlos Warner_____
CARLOS WARNER(#0068736)

# AFFIDAVIT OF ERIC R. RAMEY      9-16-15

STATE OF OHIO        :

COUNTY OF MAHONING   :

AFTER BEING DULY SWORN, ERIC R. RAMEY HEREBY STATES THE FOLLOWING:

1. I AM ERIC RAMEY AND I AM CURRENTLY DETAINED AT THE NORTHEAST OHIO CORRECTIONAL CENTER AND SUBJECT TO 15 CR 234

2. IN MARCH OF 2014 I MET AND BEGAN A RELATIONSHIP WITH JERRY ADAMS SR. AND JERRY ADAMS JR. BOTH JERRY ADAMS SR. AND JERRY ADAMS JR. DELIVERED A MATRESS TO MY MOTHER'S HOUSE.

3. SINCE THAT TIME I INTERACTED WITH BOTH JERRY ADAMS SR. AND JERRY ADAMS JR. ON A DAILY OR BI-DAILY BASIS.

4. MY MAIN RELATIONSHIP WITH BOTH JERRY ADAMS SR. AND JERRY ADAMS JR. INVOLVED THE USE OF DRUGS, AND USED OPIATES TOGETHER DURING THIS 14 MONTH PERIOD.

5. DURING THIS TIME JERRY ADAMS SR. SOUGHT TREATMENT FOR HIS ADDICTION LATE IN 2014. ALTHOUGH I NEEDED HELP I CONTINUED TO USE DRUGS WITH JERRY ADAMS JR. UNTIL AUGUST 8, 2015. WE USED ON A DAILY BASIS.

6. IN JANUARY 2015, JERRY ADAMS SR. TOLD ME HIS BROTHER WAS A JUDGE AND USED EXPLICIT PROFANITY TO DESCRIBE HIS BROTHER. AT THE TIME I DID NOT KNOW HE WAS DESCRIBING THE HONORABLE JUDGE JOHN ADAMS, EVEN AFTER I WAS INDICTED I DID NOT KNOW JUDGE ADAMS WAS RELATED TO JERRY ADAMS SR. OR JR.

1 OF 3



EXHIBIT
A

AFFIDAVIT OF ERIC R. RAMEY (CONT.)

7. ON OR ABOUT JULY 20, 2015, I ACCOMPANIED JERRY ADAMS JR. TO A NURSING HOME LOCATED ON THE CORNER OF STEINER AND BENNER RD IN WHAT I BELIEVE IS THE TOWN OF RITTMAN (ITS ALSO NEAR ORVILLE) SO JERRY COULD GET MONEY FROM HIS GRANDFATHER, WHOM I BELIEVE IS RESIDING IN THE NURSING HOME.

8. I WAITED IN THE CAR WHILE JERRY ADAMS JR. ENTERED THE NURSING HOME AND GOT WHAT I BELIEVE WAS $30.00 TO 40.00 DOLLARS. ONCE HE RETURNED TO THE CAR AND BEGAN TO PULL OUT, WE BOTH SAW JUDGE ADAMS WALKING INTO THE NURSING HOME ON THE SIDEWALK.

9. JERRY ADAMS JR. THEN SAID "THERE IS MY UNCLE JOHN," WHILE HE WAIVED. JUDGE ADAMS DID NOT APPEAR TO NOTICE OR ACKNOWLEDGE JERRY JR. JERRY THEN SAID "HE'S MY UNCLE WHO IS A JUDGE IN AKRON." I REPLIED "THAT KIND OF LOOKS LIKE MY JUDGE," BUT I WAS UNSURE AS I HAD ONLY SEEN JUDGE ADAMS ON ONE OCCASION.

10. JERRY ADAMS JR. THEN STATED THAT JUDGE ADAMS WAS NOW A FEDERAL JUDGE BUT BEFORE HE WAS A STATE JUDGE. UPON LEARNING THIS I REALIZED THAT MY CASE WAS ASSIGNED TO JERRY'S UNCLE. JERRY THEN USED PROFANITY TO DESCRIBE HIS UNCLE AND SAID HIS UNCLE DOES NOT ASSOCIATE WITH HIS FAMILY BECAUSE OF FINANCIAL AND LIFESTYLE ISSUES. THEREAFTER WE CONFIRMED THAT JUDGE ADAMS WAS MY JUDGE AFTER JERRY EXAMINED MY COURT DOCUMENTS.

11. A FEW WEEKS AFTER, JERRY JR. SHOWED ME A LETTER FROM JUDGE ADAMS ON STATIONARY INFORMING JERRY JR. NOT TO CONTACT HIM AND STATING THAT JERRY'S BEHAVIOR WAS HARMING HIS FAMILY. AGAIN JERRY JR. REITERATED HIS DISPLEASURE FOR JUDGE ADAMS.

12. ON OR ABOUT AUGUST 27, 2015 I WAS WITH BOTH JERRY ADAMS SR. AND JR. WHERE I GAVE THEM FURNATURE FOR JERRY JR.'S NEW APARTMENT. BOTH SAID THEY BELIEVED I SHOULD BRING THE RELATIONSHIP TO THE ATTENTION OF MY ATTORNEY, CARLOS WARNER.

2 OF 3

13. ON SEPTEMBER 1, 2015 I BROUGHT THIS MATTER TO THE ATTENTION OF MY ATTORNEY. I TOLD HIM THAT JERRY JR. HAD A PENDING CRIMINAL CASE IN WAYNE Co. MUNICIPAL COURT INVOLVING THE MOTHER OF MY CHILDREN, MONICA NUSSBAUM, WHERE I WAS TOLD BY WOOSTER POLICE I MAY BE CALLED AS A WITNESS AGAINST JERRY JR. I ALSO SAID I SAW JUDGE ADAMS WHILE I WAS WITH JERRY JR. I DID NOT TELL Mr. WARNER THAT I USED DRUGS WITH JERRY JR. or Sr. BECAUSE I WAS SCARED OF THE REPICUSSIONS AND I DIDN'T WANT TO GET JERRY JR. or Sr. IN TROUBLE.

14. OTHER PEOPLE WHO WOULD KNOW OF OUR RELATIONSHIP INCLUDE, SHELLY DEELHORD (MY MOTHER), MONICA NUSSBAUM (MY GIRLFRIEND) NICKI LNU (JERRY Sr.'s GIRLFRIEND), MASON PORTER (MUTUAL FRIEND) CHRIS MOORE (MUTUAL FRIEND) AND OTHERS. OF COURSE JERRY JR. AND Sr. CAN ALSO CONFIRM OUR RELATIONSHIP.

AFFIANT FURTHER SAYTH NAUGHT.

SIGNED

*Eric Ramey*
Eric Ramey

DATE
9-16-15

SIGNED AND SWORE BEFORE ME ON SEPTEMBER 16, 2015 AT THE NORTHEAST OHIO CORRECTIONAL CENTER

NOTARY PUBLIC

CARLOS WARNER ESQ.
MY COMMISSION NEVER EXPIRES
ATTORNEY AT LAW

CARLOS WARNER, Attorney At Law
Notary Public - State of Ohio
My commission has no expiration date.
Section 147.03 O. R. C.

3 of 3

<u>AFFIDAVIT OF MONICA NUSSBAUM</u>

State of Ohio          )
Summit County      ) ss.

I, MONICA NUSSBAUM, being first duly sworn, state the following:

1. I am the girlfriend of Eric Ramey.   We have dated for 16 years and have two children together and a third child on the way.

2. In March of 2014, I met Jerry Adams Sr. and Jerry Adams Jr. for the first time. I met Jerry Adams Sr. in his red Chevy Envoy. Jerry, myself and Eric drove to Canton to buy drugs.   On that first evening I met Jerry, I overdosed in Jerry's truck.   I was revived by Eric and I refused to go to the hospital.

3. Within the next few days after my overdose, I met Jerry Adams Jr. Jerry Jr. was with his girlfriend Nicki and son. The five of us went to buy drugs in Akron.

4. Since this time, I would go with Eric and either Jerry Sr. and Jr. to buy heroin on a daily basis. We bought drugs in Akron, Canton and Wooster together. We would then use the heroin together. Jerry Sr., Eric and myself would inject the heroin while Jerry Jr. and Nicki would snort the heroin.   Jerry and Nicki's son was normally with us- a fact that makes me horribly regretful and sad now.

5.  I have provided the contact information for Jerry Sr., Jerry Jr. and Nicki to Eric's lawyer, Mr. Warner. Jerry Adams Sr.'s cellular number is 330-350-XX14 and 234-650-XX60. Jerry Adams Jr.'s cellular number is 330-907-XX10.   I call Nicki and Jerry Jr. at 330-473-XX53.

6. Jerry Adams Jr. and I are involved in an ongoing criminal matter involving the alleged theft of property from Khol's department store in Wayne Co. I am unsure of the status of Jerry's case, but my case is still pending.   The case has been continued because I have sought treatment at the Beacon House in Wooster OH for my heroin addiction, where currently reside.

7. I have several photographs stored in my phone which show Eric holding Jerry and Nicki's son and also pictures of the son sleeping. I also have accompanied Shelly Delhorbe to pick up Eric at Jerry Adams Sr.'s trailer on several occasions.

8. I have had several conversations with Jerry Sr.'s wife Tracie and also borrowed Jerry Sr.'s car for several months (a white car).

9. Both Jerry Sr. and Jr. said very derogatory things about the Honorable Judge John Adams. They said that they called Judge Adams asking for money.   The Judge responded by letter and gave a $50.00 check.   This upset both Nicki and Jerry Adams Jr. Soon thereafter they both said the Judge was an "[expletive]" and that "he doesn't like anyone."





**EXHIBIT**

B

10. In July 2015, after we learned Judge Adams was Eric's Judge, Jerry Jr. and Nicki said the Judge has an Amish background and that the Judge would be harsh on Eric because they understood that Eric allegedly passed some of the counterfeit notes in the Amish community.

11. I also heard them encourage Eric to raise the issue with his lawyer because they believed it would not be fair to have Judge Adams decide Eric's case.   I recall these conversations happening in July of 2015.

FURTHER AFFIANT SAYETH NAUGHT.

Monica Nussbaum

Sworn to before me and subscribed in my presence this \_\_\_ day of SEPTEMBER , 2015.

Notary Public
Expiration:

CARLOS WARNER, Attorney At Law
Notary Public - State of Ohio
My commission has no expiration date.
Section 147.03 O. R. C.

( 2 of 2 ) CW

<u>AFFIDAVIT OF SHELLY DELHORBE</u>

State of Ohio )
Summit County ) ss.

I, Shelly Delhorbe, being first duly sworn, state the following:

1. I am the mother of Eric Ramey.

2. In March of 2014, I met Jerry Adams Sr. He delivered a mattress to my home. I don't recall meeting Jerry Adams Jr. at that time.   I do not recall personally meeting Jerry Adams Jr. until July 2015. In 2014 I recall on several occasions Jerry Sr. and Jerry Jr. picking up Eric from my house. Eric was living with me for significant periods of time in 2014 and 2015.

3. I was afraid that Eric, Jerry Sr. and Jerry Jr. were using drugs, because some of the things Eric said about them and their relationship. Both Jerry Sr. and Jr. would pick up Eric at all times of day and night. Jerry Sr. would normally pick up Eric, but sometimes Jerry Jr. would and sometimes both would.   On several occasions Jerry Sr. entered my house and would sit and talk with me about current events and other superficial topics.

4. Sometime at the end of August 2015, Jerry Adams Jr. entered my house to use the bathroom.   After he used the bathroom, Jerry Jr. said to me "Eric might as well go into court fucked up because my uncle is just going to put him away anyhow, that's how he is." He then further stated that "you can have Eric's lawyer call me so I can tell him that Eric and I are friends and that my uncle is a [expletive]."

FURTHER AFFIANT SAYETH NAUGHT.

_Shelly Delhorbe_
Shelly Delhorbe

Sworn to before me and subscribed in my presence this ___ day of _September_, 2015.

_____
Notary Public
Expiration:

CARLOS WARNER, Attorney At Law
Notary Public - State of Ohio
My commission has no expiration date.
Section 147.03 O. R. C.

**EXHIBIT**

C

Exhibit 3

Response in Opposition to Motion to Disqualify

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO. 5:15CR234 |
| | ) | |
| Plaintiff, | ) | JUDGE JOHN R. ADAMS |
| | ) | |
| v. | ) | |
| | ) | |
| ERIC RAMEY, | ) | RESPONSE IN OPPOSITION TO |
| | ) | MOTION TO DISQUALIFY THE |
| Defendant. | ) | HONORABLE JOHN ADAMS |
| | ) | UNITED STATES DISTRICT JUDGE |
| | ) | **(FILED UNDER SEAL)** |

Now comes the United States of America, by and through counsel, Steven M. Dettelbach,

United States Attorney, and Linda H. Barr, Assistant United States Attorney, and opposes

Defendant's motion to "Disqualify the Honorable John Adams United States District Court

Judge." Ramey filed his motion pursuant to 28 U.S.C. §§ 144 and 455 "because a reasonable,

objective person, knowing all of the circumstances, would question the judge's impartiality."

Furthermore, Defendant argues that 28 U.S.C. § 144 also requires disqualification of the judge

"whenever a party to any proceeding in a district court makes and files a timely and sufficient

affidavit that the judge before whom the matter is pending has a personal bias or prejudice either

against him or in favor of any adverse party." It is the position of the United States that

disqualification is not required since Defendant has not met the standard for such recusal. The Government's position is more fully set forth in the memorandum below.

Respectfully submitted,

STEVEN M. DETTELBACH
United States Attorney

By:   /s/ Linda H. Barr
Linda H. Barr (PA: 0041079)
Assistant United States Attorney
Two South Main Street, Room 208
Akron, OH 44308
(330) 761-0521
(330) 375-5492 (facsimile)
Linda.Barr@usdoj.gov

## MEMORANDUM

### A. FACTS

Defendant has filed this Motion to Disqualify, requesting that the Court recuse itself from presiding over his criminal case.

Defendant is charged in a two-count indictment with counterfeiting Federal Reserve Notes, in violation of 18 U.S.C. §§ 471 and 472. (R. 1, PageID 1-2). Defendant was arraigned on the indictment on July 14, 2015. As a result of a target letter sent by the United States to Defendant prior to his indictment, the Federal Public Defender's Office was appointed on October 6, 2014, to represent Defendant. This legal representation, specifically by Assistant Federal Public Defender Carlos Warner, continues to the present.

On September 1, 2015, defense counsel and government's counsel, participated in a chambers Status Conference. Defendant did not participate in the conference. At that time, defense counsel stated on the record that Defendant was a friend of the presiding Judge's nephew, Jerry Adams Jr. The nephew was charged with theft in Wayne County, Ohio, and

Defendant claimed he was a potential witness for the prosecution in that matter. The Court stated that it had been months since the Court last had contact with his nephew. Thereafter, the presiding Judge denied disqualification under the facts presented.

Additionally, on September 1, 2015, Defendant tested presumptively positive for opiates. Therefore, the Pretrial Conference was continued to September 14, 2015. At the hearing on September 1, Defendant was found in violation of his bond conditions, namely opiate usage, and his bond was revoked for reasons stated on the record. Defendant was remanded to the custody of the U.S. Marshal. At the hearing, Defendant denied any drug usage. U.S. Pretrial and Probation was ordered to submit the drug test to a laboratory for further testing. The Court stated that once test results were confirmed, Defendant could request a detention hearing.

On September 14, 2015, a Pretrial Conference was held in which it was anticipated that Defendant would enter a change of plea. However, at that time, defense counsel presented new allegations as a basis for disqualification, including drug usage by Defendant with the presiding Judge's nephew, Jerry Adams Jr., as well as Jerry Adams Sr., the presiding Judge's brother. The Court gave defense counsel ten days to submit written affidavits under seal from Defendant and others with knowledge of the alleged conflict. The United States was given seven days to respond to the filing. (The United States was later granted a seven day extension of the response deadline with agreement of defense counsel.) On September 24, 2015, Defendant filed a sealed Motion to Disqualify and attached three affidavits from Defendant, and Defendant's mother and girlfriend detailing their involvement with Jerry Adams Sr., the presiding Judge's brother, and Jerry Adams Jr., the presiding Judge's nephew. Defendant did not submit an affidavit from either the brother or the nephew. Specifically, in Defendant's motion, it is stated that Jerry Adams Jr. confirmed his relationship with Defendant but did not submit an affidavit regarding

the same. According to the motion, Jerry Adams Jr. stated that his father was in drug rehabilitation in Florida.

## B. LAW AND ANALYSIS

Defendant has not met the standard for judicial disqualification as outlined in Title 28, United States Code, Sections 144 or 455. The affidavits as submitted by Defendant are insufficient to establish that the presiding Judge has a personal bias or prejudice against Defendant. In addition, defense counsel failed to file a certificate of counsel of record stating that the filing was made in good faith as required by Title 28, United States Code, Section 144. This procedural irregularity is a further reason to deny the motion. It is the position of the United States that the presiding Judge can be fair and impartial in this matter and Defendant's Motion to Disqualify should be denied.

Title 28, United States Code, Section 455 provides in pertinent part:

> (a)    Any justice, judge, or magistrate judge of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned.

> (b)    He shall also disqualify himself in the following circumstances:

>    (1) Where he has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding; . . .

This is the portion of 28 U.S.C. § 455 upon which Defendant relies in requesting a disqualification of the Court. It has long been the law in the Sixth Circuit that "a judge must recuse himself if a reasonable, objective person knowing all the circumstances, would have questioned the judge's impartiality." *Hughes v. United States*, 899 F.2d 1495, 1501 (6th Cir. 1990), cert. denied, 498 U.S. 980 (1990). The standard is an objective one; therefore, the judge need not recuse himself based on the "subjective view of a party" no matter how strongly that

4

view is held. *Browning v. Folts*, 837 F.2d 276, 279 (6th Cir. 1988), cert. denied, 488 U.S. 1018

(1989).  In addition, prejudice or bias must be personal or extrajudicial in order to justify recusal

under § 455(a).  *United States v. Sammons*, 918 F.2d 592, 599 (6th Cir. 1990).  In *Wheeler v.*

*Southland Corp.*, 875 F.2d 1246, 1251 (6th Cir. 1989), the court explained this requirement:

> Personal bias is prejudice that emanates from some source other than participation
> in the proceedings or prior contact with related cases.  Personal bias arises out of
> the judge's background and associations.  The critical test is whether the alleged
> bias "stems from an extrajudicial source and results in an opinion on the merits on
> some basis other than what the judge learned from his participation in the case.

Also in the motion, defendant relies on 28 U.S.C. § 144, which provides:

> Whenever a party to any proceeding in a district court makes and files a
> timely and sufficient affidavit that the judge before whom the matter is pending
> has a personal bias or prejudice either against him or in favor of any adverse
> party, such judge shall proceed no further therein, but another judge shall be
> assigned to hear such proceeding.
>
> The affidavit shall state the facts and the reasons for the belief that bias or
> prejudice exists, and shall be filed not less than ten days before the beginning of
> the term at which the proceeding is to be heard, or good cause shall be shown for
> failure to file it within such time.  A party may file only one such affidavit in any
> case.  It shall be accompanied by a certificate of counsel of record stating that it is
> made in good faith.  (Emphasis added.)

In this case, each fact set forth by Defendant to support recusal is a product of Defendant and

his counsel presenting the information to the Court.  Any knowledge that the presiding Judge

gained about Defendant's relationship with the Judge's brother or nephew came directly from

Defendant or his counsel in the course of judicial proceedings.  None of the information at

issue in Defendant's disqualification motion is an extrajudicial source of bias or prejudice.

No such affidavit was filed when the matter of disqualification was initially presented on

September 1, 2015.  Defendant's counsel orally represented at that hearing that Defendant was to

be a witness against the presiding Judge's nephew in a criminal proceeding in Wayne County,

Ohio, for theft.  The presiding Judge declined to recuse himself from the case stating that he had

5

no contact with either his brother or his nephew. Thus, the presiding Judge would not have known about Defendant's relationship with the former's family except for the fact that Defendant himself presented these matters to the Court. Defendant's own affidavit, filed after the first basis for recusal was denied on September 1, acknowledges that the presiding Judge's nephew stated the Judge does not associate with his family because of "financial and lifestyle issues."

Three affidavits by Defendant and his mother and girlfriend were subsequently filed on September 24, 2015, alleging that Defendant, his mother and girlfriend either engaged in drug use with the presiding Judge's brother and/or nephew or witnessed the same. There was no certification signed by defense counsel that the affidavits were filed in good faith as required, and, thus, there can be no reliance on 28 U.S.C. § 144. The Sixth Circuit, when considering the relationship between § 144 and § 455 wrote:

> As we have explained, "[i]t is well settled that sections 144 and 455 'must be construed *in pari materia*' and 'that disqualification under section 455(a) must be predicated as previously under section 144, upon extrajudicial conduct rather than on judicial conduct.'" *United States v. Story*, 716 F.2d 1088, 1091 (6th Cir. 1983) (quoting *City of Cleveland v. Krupansky*, 619 F.2d 576, 578 (6th Cir. 1980)).

*Youn v. Track, Inc.*, 324 F.3d 409, 423 (6th Cir. 2002).

In addition, Defendant's credibility is seriously at issue because, at the first hearing (bond revocation hearing on September 1, 2015), he denied any drug usage and then subsequently on September 24, 2015, filed a sworn affidavit with the court stating that he engaged in opiate use with the presiding Judge's brother and nephew since March 2014. In addition, Defendant and his counsel failed to correct the record made at the September 1, 2015, hearing regarding Defendant's potential to be a prosecution witness against the presiding Judge's nephew. In fact, on September 15, 2015, a judgment entry was made in the case of

*State of Ohio vs. Jerry Adams* (Case No. 2013 CR-B 000884), ordering that the offense of complicity in the commission of an offense was dismissed due to insufficient evidence to proceed. A copy of the Judgment Entry and Complaint from Wayne County, Ohio in that case are attached as Exhibit A. Thus, Defendant will not be a witness against the presiding Judge's nephew and the Court would have no reason to be biased against a person who will not be testifying against a relative.

Finally, Defendant is charged in this case with counterfeiting. His relationship with the presiding Judge's brother and nephew, according to the affidavits, revolves around drug usage since meeting the two men in March 2014. There is no allegation that the Judge's brother or nephew were in any way involved in the counterfeiting or even had knowledge of Defendant's counterfeiting activities. In fact, according to his affidavit, Defendant did not meet the presiding Judge's brother or nephew until March 2014, well after the June 2013 time period alleged in the Indictment during which Defendant was counterfeiting United States currency. Thus, when Defendant was committing the crimes with which he is charged, he had no relationship with the presiding Judge's family members. Under such circumstances, the presiding Judge has no reason to be biased against a Defendant charged with criminal conduct different from that allegedly engaged in by the Judge's brother and nephew.

Defendant has not met his burden, and the Court, who the United States believes is fair and impartial, should not recuse itself.

Respectfully submitted,

STEVEN M. DETTELBACH
United States Attorney

By:    /s/ Linda H. Barr

Linda H. Barr (PA: 0041079)
Assistant United States Attorney
Two South Main Street, Room 208
Akron, OH 44308
(330) 761-0521
(330) 375-5492 (facsimile)
Linda.Barr@usdoj.gov

## CERTIFICATE OF SERVICE

I hereby certify that on this 8th day of October 2015 a copy of the foregoing document was filed electronically under seal.  Notice of this filing will be e-mailed to counsel for defendant Eric Ramey.

/s/ Linda H. Barr

Linda H. Barr
Assistant U.S. Attorney

Filed on 09/15/2015 at 08:18 AM in Wayne County, Ohio

## WAYNE COUNTY MUNICIPAL COURT
Carol White Millhoan, Judge
Timothy R. VanSickle, Judge

**STATE OF OHIO**                                  )

                                                   )   **JUDGMENT ENTRY**
VS.                                                )
                                                   )   Case No. 2015 CRB 0884
Jerry Adams                                        )

State of Ohio requests this Honorable Court dismiss the following charge(s): § 2923.03(A)(3)

In exchange for plea(s): Insufficient evidence to proceed,

                                                   Prosecuting Attorney

**APPROVED:** Carol White Millhon      09/14/2015
              Judge/Magistrate

EXHIBIT A-1

e-filed on 06/19/2015 at 08:59 AM in Wayne County, Ohio

# Wayne County Municipal Court

State of Ohio,
                              )
                    Plaintiff  )        CASE NO.  2015 CR-B 000884
            vs.               )
                              )        1 Count
Jerry Adams                    )
10 E MARKET ST                 )        CAROL WHITE MILLHOAN
MARSHALLVILLE, OH 44645,       )
                    Defendant  )        **Complaint**

| Count One | **Complicity in the Commission of an Offense - M1** Ohio Revised Code §2923.03(A)(2) |
| --- | --- |
| **Date of Offense** | On or about  May 9, 2015 |

Complainant assistant prosecuting attorney being duly sworn states that Suzanne Trepal has filed an affidavit, a copy of which is attached hereto, stating that:

On or about May 9, 2015 in the city, town or village of WOOSTER, including the unincorporated limits, in Wayne County, Ohio, the above named Defendant did act with the kind of culpability required for the commission of an offense and did aid or abet another in committing the offense of Petty theft by deception, and the underlying offense was a misdemeanor of the first degree, to wit: tried to return miscellaneous merchandise at Kohl's to obtain a refund after Monica Nussbaum had stolen miscellaneous merchandise and requested him to do so..

The offense is contrary to the form of the statute in such case made and provided, and against the peace and dignity of the State of Ohio.

**EXHIBIT A-2**

THE STATE OF OHIO, WAYNE COUNTY

Sworn to and subscribed in my presence on _6-19-15_
                                               Date

_____
Michael Cooper #0091765
Assistant Prosecutor

_____
Notary Public - State of Ohio

The Assistant County Prosecutor requests service by:

✓____ Summons by mail
_____ Personal Service
_____ Issuance by warrant

Julie Zawadzki
Notary Public, State of Ohio
My commission expires
September 21, 2019

_____
Michael Cooper #0091765
Assistant Prosecutor

Page 2 of 2

**EXHIBIT A-3**

Exhibit 4

Certification that Motion to Disqualify is

Made in Good Faith

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | CASE NO. 5:15-CR-234 |
| | : | |
| Plaintiff, | : | |
| | : | JUDGE JOHN ADAMS |
| vs. | : | |
| | : | |
| ERIC R. RAMEY, | : | CERTIFICATION THAT MOTION TO |
| | : | DISQUALIFY IS MADE IN GOOD |
| Defendant. | : | FAITH AND REQUEST FOR HEARING |
| | : | |
| | : | (FILED UNDER SEAL) |

As a preliminary matter the Undersigned asserts that his Motion for Disqualification [Dkt. #11] is made in good faith. All motions filed by the defense must always be made in good faith, but nonetheless in light of the government's response, allow this filing to reassure the Court that the Motion to Disqualify was made in good faith.

The Undersigned obtained the affidavits in Mr. Ramey's Motion personally and also spoke with Jerry Adams Jr. The Undersigned reasserts that the phone numbers provided to him connect to Jerry Adams Jr. and Sr. and thus corroborate Mr. Ramey's and the other witnesses affidavits. The government has not denied that Mr. Ramey has a long standing history of substance abuse with members of the Court's family. Instead, the government implies that the Undersigned should not have raised the issue, and because the Undersigned did bring the issue to the Court's attention, the Court should not disqualify itself because the source of the information was not "extrajudicial."

1

This is pure nonsense. The "extrajudicial" prejudice in this case stems from the fact that Mr. Ramey was engaged in long term drug abuse with people with close affinity to the Court. "Extrajudicial" in these circumstances is simply defined as a statement or circumstance that occurred outside of court or the case *sub judice.* To argue otherwise does a disservice to this Honorable Court as it is misleading and only causes delay for Mr. Ramey. That drug use in this case is largely ancillary matter to this case (it was the reason the conduct occurred) but is "extrajudicial" because it involves close members of this Court's family and would cause a reasonable person to question the Court's impartiality. The fact that this Court has purportedly severed ties with this portion of its family is entirely irrelevant, as a reasonable objective person would still call into question this Court's impartiality under these difficult circumstances.

Inexplicably, the government also argues that the Defendant's credibility is at issue. The information is embarrassing and sad and does not necessarily assist Mr. Ramey in his defense or in mitigation. Moreover, the information provided by Mr. Ramey and the two other witnesses has been corroborated by the undersigned in a phone call with Jerry Adams Jr. If somehow the Court is not convinced of the relationship between Mr. Ramey and the Court's family, the undersigned reluctantly requests a hearing where he may subpoena Jerry Adams Jr., Jerry Adams Sr. and other witnesses to demonstrate the relationship that would obviously lead a reasonable, objective person to question this Court's impartiality.

The Undersigned hopes the Court will not take this route as it will only lead to additional damage for all of those involved. Mr. Ramey hopes to resolve his case expeditiously before an impartial court and does not wish to cause more conflict. Mr. Ramey and his family are attempting to move forward with their lives. Jerry Adams Jr. related the same, that he was looking forward to moving on with his life. Jerry Adams Jr. also related that he was happy his

father was in treatment. Reliving the past 14 months of addiction before this Honorable Court would likely be damaging for all involved. Thus, the Undersigned respectfully requests that the Court recuse itself for the reasons stated herein and in Mr. Ramey's Motion to Disqualify.

Respectfully submitted,

/s/Carlos Warner
CARLOS WARNER(#0068736)
Assistant Federal Public Defender
50 South Main Street, Suite 700
Akron, Ohio 44308
(330) 375-5739 Fax: (330) 375-5738
e-mail address: carlos_warner@fd.org.

3

CERTIFICATION

I hereby certify that on the 8th day of October, 2015, the foregoing was filed electronically under seal. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. A copy of this filing was sent to Assistant U.S. Attorney Linda Barr this same day.

*s/Carlos Warner*
Carlos Warner
Assistant Federal Defender
