November 13, 2015

Robin Johnson, Case Manager
Potter Stewart U.S. Courthouse
100 East Fifth Street, Suite 540
Cincinnati, OH 45202-3988

  *Re:* Case No. 15-4199, *In re: Eric R. Ramey*
   Originating Case No.:  5:15CR234

Ms. Johnson,

  I recently received from you a copy of Mr. Ramey's petition for a writ of mandamus along with an invitation for me to respond to the petition.  I now take the opportunity to respond.  In so doing, I would respectfully request that the petition be denied.

  The cornerstone of any review in this matter involves reviewing the totality of the facts from the standpoint of an objective person.  *See Browning v. Foltz*, 837 F.2d 571, 577 (6th Cir. 1985).  This objective review is required to ensure that a defendant receives the "cold neutrality of an impartial judge."  *United States v. Baker*, 441 F.Supp. 612, 615 (M.D.Tenn. 1977).  While seeking that "cold neutrality," Mr. Ramey's petition contains the following remarks:

- "This is nonsense."  Petition at 2.

- Not recusing is "unconscionable and clearly calls the Court's impartiality into grave question."  Petition at 3.

- "this finding is completely devoid of reason"  Petition at 3.

- "This logic is mind boggling."  Petition at 4.

- "The recalcitrance exhibited by the Court" and "an obviously spurious position by the Court"  Petition at 4-5.

While intemperate and inflammatory by design, the petition does not state a valid claim for mandamus.

Initially, the undersigned would ask this reviewing Court to closely examine how the facts developed in this Court. It is undisputed that the undersigned was wholly unaware of any relationship between Mr. Ramey and the undersigned's nephew and brother. When the issue was first raised to the undersigned, Mr. Ramey indicated that he was somehow involved with the undersigned's nephew and expected to testify against him in a pending criminal proceeding. When that did not result in recusal, Mr. Ramey upped the ante and claimed a friendship with both my nephew and my brother that had spanned years – a fact that contradicts other portions of Mr. Ramey's affidavit. When those additional allegations still did not result in a *sua sponte* recusal, Mr. Ramey's affiliation with my relatives then evolved into a fourteen-month drug binge. While I was required to accept these as true for certain portions of my recusal analysis, this panel should be clear that I do not concede them to be accurate. Furthermore, given the piecemeal manner in which they were presented, this panel should also have significant doubts about their accuracy.

This Court has previously explained its standard in reviewing petitions for mandamus.

It is axiomatic that "[m]andamus relief is an extraordinary remedy, only infrequently utilized by this court." *In re Perrigo Co*., 128 F.3d 430, 435 (6th Cir. 1997). Mandamus from this court is generally reserved for "questions of unusual importance necessary to the economical and efficient administration of justice" or "important issues of first impression." *Id*. (quoting *EEOC v. K–Mart Corp*., 694 F.2d 1055, 1061 (6th Cir. 1982)). Indeed, for the writ to issue, petitioners must demonstrate a "clear abuse of discretion" on the part of the district court. *Mallard v. U.S. Dist. Court*, 490 U.S. 296, 309, 109 S.Ct. 1814, 104 L.Ed.2d 318 (1989); *In re King World Prods., Inc.*, 898 F.2d 56, 58 (6th Cir.1990).

In an effort to distinguish between "errors that are merely reversible and not subject to mandamus, and those errors that are of such gravity that mandamus is proper," *In re Bendectin Prods. Liab. Litig*., 749 F.2d 300, 303 n. 5 (6th Cir. 1984) (citation omitted), this court balances five factors. We examine whether: (1)

> the party seeking the writ has no other adequate means, such as direct appeal, to attain the relief desired; (2) the petitioner will be damaged or prejudiced in a way not correctable on appeal; (3) the district court's order is clearly erroneous as a matter of law; (4) the district court's order is an oft-repeated error, or manifests a persistent disregard of the federal rules; and (5) the district court's order raises new and important problems, or issues of law of first impression. *In re Perrigo Co.*, 128 F.3d at 435 (citing *In re Chimenti*, 79 F.3d 534, 540 (6th Cir.1996)). These factors need not all be met, and some factors will often be balanced in opposition to each other. *Id*. Because the first, second, third, and fifth factors all weigh in favor of granting the writ, this case presents the type of extraordinary circumstance that warrants mandamus relief.

*John B. v. Goetz*, 531 F.3d 448, 457 (6th Cir. 2008). The United States Supreme Court has noted that because the writ of mandamus is one of "the most potent weapons in the judicial arsenal," a petitioner must satisfy "the burden of showing that [his] right to the issuance of the writ is 'clear and indisputable.'" *Cheney v. U.S. District Court for the District of Columbia*, 542 U.S. 367, 380-81 (2004) (citations omitted).

Within his petition, Ramey does not identify the factors analyzed by this Court, nor does he address them in any manner. A review of the factors, however, supports a conclusion that the petition lacks merit.

With respect to the first and second factors, the availability of other adequate means and irreparable harm, the record does not warrant mandamus. Both the trial court record and the petition make it clear that Mr. Ramey desires to plead guilty to the indictment. The undersigned attempted to facilitate this plea by referring the matter to a magistrate judge. As such, Mr. Ramey had, and continues to have, the opportunity to enter his plea before a neutral judicial officer. As a result, the sole proceeding that would remain before the undersigned is a sentencing hearing. With such a limited proceeding remaining before the undersigned, Mr. Ramey has an adequate remedy – a direct appeal of his sentence. Moreover, Mr. Ramey can

show no irreparable harm from the minimal delay that would result if this Court were to require Mr. Ramey to raise the issue through direct appeal.

Mr. Ramey also cannot demonstrate the fourth or fifth factors discussed above. Mr. Ramey alleges no practice by this Court or past conduct by this Court that would suggest an "oft-repeated" error. Further, Mr. Ramey does not allege that the issues created are new or are issues of first impression. Rather, he argues a rather straightforward application of the statutory framework surrounding recusal. As such, neither of these factors warrants the exercise of an extraordinary writ.

As a result, Ramey is left only to argue that the undersigned's decision was clearly erroneous as a matter of law. As will be demonstrated below, this argument lacks merit.

I believe that most, if not all, of Mr. Ramey's substantive arguments regarding disqualification were adequately and properly addressed in my denial of his motion to disqualify. I do wish, however, to respond to several arguments posed in the petition.

The petition asserts that the "the Court somehow finds that the undersigned did not 'certify' the conflict[.]" Petition at 3. The petition goes on to state:

> It appears the Court is asking that the undersigned actually file some sort of certificate certifying that the motion and basis for this is made in good faith. Again, this finding is completely devoid of reason.

Petition at 3. The petition raises this argument despite the clear requirement of 28 U.S.C. 144 which provides: "A party may file only one such affidavit in any case. **It shall be accompanied by a certificate of counsel of record stating that it is made in good faith**." (Emphasis added).

> The purpose of the requirement that an affidavit of prejudice under Section 144 be accompanied by a certificate of good faith filed by counsel of record, is to prevent abuse. Under this section, 'counsel of record * * * has an obligation which he owes to the court as well as to his client, and he owes a public duty to aid the administration of justice, to uphold the dignity of the court and respect its

> authority.' *United States v. Onan*, 190 F.2d 1, 6-7 (8th Cir.), *cert. denied*, 342 U.S. 869, 72 S.Ct. 112, 96 L.Ed. 654 (1951). The certificate 'requirement is founded on the assumption that a member of the bar or counsel of record will not indulge in reckless disregard of the truth, and further attests to the good faith and belief of the affiant.' *Mitchell v. United States*, *supra* 126 F.2d at 552; *see United States v. Gilboy*, *supra* 162 F.Supp. at 391.
>
> A charge of prejudice is a most serious matter, and is not to be lightly or frivolously made. Accordingly, counsel should not affix his name without considerable deliberation and investigation as to whether the allegations in the affidavit are true. … 'These affidavits should be prepared with the utmost care and certainty as to the facts.' *Eisler v. United States*, 83 U.S.App.D.C. 315, 170 F.2d 273, 283 (1948) (Prettyman, J., dissenting). 'If a certificate is to serve the purpose of shielding a court which cannot test the truth of claimed facts, it should at least carry the assertion that counsel believes the facts alleged to be accurate and correct.' *In re Union Leader Corp.*, *supra* 292 F.2d at 385.

*United States v. Hanrahan*, 248 F. Supp. 471, 478 (D.D.C 1965). Thus, while counsel argues that the Court's requirement of a distinct certificate of counsel of record is "devoid of reason," he ignores the plain language of the statute.

Furthermore, counsel asserts that his subsequent filing which describes his alleged investigation that verified portions of the affidavit served to comply with the statutory requirements. In that vein, counsel wholly ignores that Mr. Ramey's affidavit again discusses that he may be a witness in a criminal matter pending against Jerry Adams, Jr. However, a review of the Government's response and the public docket reveals that the criminal matter was dismissed on September 14, 2015, while Mr. Ramey's affidavit was dated September 16, 2015. Moreover, while counsel asserts that he thoroughly verified the underlying facts, he also never notified the Court of this fact, despite his reply being filed on October 8, 2015, nearly 3 weeks after the dismissal of the criminal matter. As such, both counsel's strict compliance and even his substantial compliance with the requirements of § 144 are called into question.

In any event, the undersigned did not deny the motion to disqualify on technical grounds. As a result, this Court need not review whether counsel complied with the statutory requirements. Instead, the undersigned would ask that the manner in which the motion was presented be taken into consideration when evaluating whether Mr. Ramey has shown a clear and indisputable right to the relief he seeks herein.

Assuming that the above statutory requirements were satisfied, Mr. Ramey's arguments fail on their merits. "[O]pinions formed by the judge on the basis of facts introduced or events occurring in the course of the current proceedings, or of prior proceedings, do not constitute a basis for a bias or partiality motion unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible." *Liteky v. United States*, 510 U.S. 540, 555 (1994). As noted above, the facts surrounding Mr. Ramey's relationship were first introduced during these proceedings and otherwise unknown to the undersigned. As such, Mr. Ramey must demonstrate that the facts "display a deep seated…antagonism" making it impossible for me to render a fair judgment. As Mr. Ramey has shown nothing more than the fact he alleged had an illicit relationship that involved conduct wholly unrelated to his indictment, he falls well short of demonstrating any appearance of antagonism, let alone a deep seated antagonism. As such, his motion lacked merit.

The remainder of Mr. Ramey's petition reasserts many of the arguments raised before the undersigned and contains the same errors of law. For example, Mr. Ramey once again attempts to merge 28 U.S.C. 455 (a) and 28 U.S.C. 455(b)(5). In so doing, Mr. Ramey ignores precedent from the United States Supreme Court and instead seeks to create a new recusal standard. This Court should not abandon the well-settled law surrounding recusal.

With regard to the interplay between § 455(a) and (b), the Supreme Court has noted:

Case: 15-4199    Document: 12    Filed: 11/13/2015    Page: 7

Eric R. Ramey Mandamus Response
November 13, 2015
Page 7 of 9

> Declining to find in the language of § 455(a) a limitation which … is contained in the language of § 455(b)(1) would cause the statute, in a significant sense, to contradict itself. As we have described, § 455(a) expands the protection of § 455(b), but duplicates some of its protection as well—not only with regard to bias and prejudice but also with regard to interest and relationship. Within the area of overlap, it is unreasonable to interpret § 455(a) (unless the language requires it) as implicitly eliminating a limitation explicitly set forth in § 455(b). **It would obviously be wrong, for example, to hold that "impartiality could reasonably be questioned" simply because one of the parties is in the fourth degree of relationship to the judge.** Section 455(b)(5), which addresses the matter of relationship specifically, ends the disability at the third degree of relationship, and that should obviously govern for purposes of § 455(a) as well.

*Liteky*, 510 U.S. at 552-53 (1994) (emphasis added). Similarly, it would "obviously be wrong" to hold that impartiality could be questioned because the defendant is acquainted with an individual within the third degree of relationship to the judge while not satisfying any of the subsections (i – iv) of § 455(b)(5).

Within his petition, it appears that Mr. Ramey seeks to apply the *per se* rule contained in § 455(b)(5) to § 455(a) while simultaneously eliminated the requirements of § 455(b)(5)(i)–(iv). Essentially, Mr. Ramey seeks a ruling that requires recusal whenever the defendant has a relationship with an individual within the third degree of relationship to the judge. Such a bright line rule is precluded by the plain language of § 455. With respect to the third degree of relationship to the judge, recusal is warranted when that individual is

> (i) Is a party to the proceeding, or an officer, director, or trustee of a party;
>
> (ii) Is acting as a lawyer in the proceeding;
>
> (iii) Is known by the judge to have an interest that could be substantially affected by the outcome of the proceeding;
>
> (iv) Is to the judge's knowledge likely to be a material witness in the proceeding.

28 U.S.C.A. § 455(b)(5). It is undisputed that none of these factors exist in the instant matter, rendering § 455(b)(5) wholly inapplicable.

As a result, Mr. Ramey is left to argue that the facts as a whole would cause a reason person to question my impartiality in this matter. As noted above, § 455(b)(5) contemplates some, minimal relationship to the ongoing litigation before requiring recusal. Mr. Ramey seeks a far broader standard, suggesting that recusal is mandated when a defendant has any relationship with a judge's relative. This imposes a burden never before placed upon sitting judges. It now requires that judges somehow know all of the friends of any individual who falls within the third degree of relationship. If Mr. Ramey's arguments are accepted, even without a motion, a judge would be required to recuse when a defendant appears before them and has such an existing relationship.

In addition, such a standard is ripe for abuse. The additional affidavits strongly suggest that such is occurring herein. Mr. Ramey's girlfriend, Monica Nussbaum, submitted an affidavit that stated:

> In July 2015, after we learned that Judge Adams was Eric's Judge, Jerry Jr. and Nicki said the Judge has an Amish background and that the Judge would be harsh on Eric because they understood that Eric allegedly passed some of the counterfeit notes in the Amish community.

Doc. 11-1 at 5. The statement is troubling for several reasons. First, Ms. Nussbaum suggests that my nephew informed her that I had "an Amish background." A fact that is untrue and that my nephew would certainly know was untrue. However, even accepting it as true, it serves to demonstrate that Mr. Ramey was not concerned about any potential conflict, but was far more concerned that he would receive a harsh sentence from the undersigned. Such a concern cannot serve as a valid basis to seek recusal and therefore it appears that Mr. Ramey sought out another rationale to achieve his desired result. Furthermore, while Mr. Ramey has time and again has repeated his desire to plead guilty, he refused to do so before a neutral magistrate laboring under

no alleged conflict.[1]  It is clear that Mr. Ramey will not enter such a plea, not because of an alleged conflict, but because he desires a different sentencing judge.  This Court therefore should not approve of the manner in which he sought recusal.

  In closing, I would reiterate that Mr. Ramey bears the burden of demonstrating a clear and indisputable right to issuance of the writ.  I believe that my order and this response demonstrate that Mr. Ramey cannot meet his high burden.  He seeks to create a new standard requiring recusal for a far broader range of relationships than ever contemplated by the existing statutory framework.  Even if an appellate panel were to subsequently desire to expand the existing precedent regarding recusal, Mr. Ramey's current mandamus petition falls well short of demonstrating a clear and indisputable right to his sought-after relief. Accordingly, I respectfully request that the petition be denied.

                   Respectfully submitted,

                   */s/ John R. Adams*
                   John R. Adams
                   United States District Judge

---

[1] This Court should note that had Mr. Ramey entered his plea before the magistrate judge, his counsel could have requested that the undersigned take no action on that plea.  In that manner, Mr. Ramey's presentence report preparation could have begun and counsel's concerns over the delay in these proceedings could have been ameliorated.